# APPENDIX A

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA
Washington, D.C.**

THE EXCELLENT THE EXCELLENT RAJ K. PATEL, from all capacities, et al.,

*Plaintiffs*

v.

THE UNITED STATES, et al.,

*Defendants*

No. 1:25-cv-02383-UNA

Dated: October 28, 2025

### RAJ K. PATEL'S TENTH AMENDED MOTION TO RECONSIDER

Plaintiff Raj K. Patel respectfully requests reconsideration of the dismissal under § 1915(e)(2)(B), asserting that the complaint alleges a concrete injury—the deprivation of a Juris Doctor degree—which constitutes a protected property interest and a liberty interest of reputation and professional career caused by the defendant(s) failure to enforce Due Process. *Goss v. Lopez*, 419 U.S. 565, 566 & 575 (1975). The factual allegations are supported by documentary evidence and do not rise to the level of irrationality or fancifulness as defined in *Denton v. Hernandez,* 504 U.S. 25 (1992). *Infra* n. 3. The Court dismissed the Complaint as "frivolous," "irrational," and "wholly incredible." Patel respectfully submits that the allegations, while complex and perhaps not conventionally pleaded, raise serious constitutional questions deserving of further examination of the legal theory and factual basis. *Malinski v. New York*, 324 U.S. 401, 415 (1945) ("To suppose that 'due process of law' meant one thing in the Fifth Amendment and another in the Fourteenth is too frivolous to require elaborate rejection."). See Fed. R. of Evid. 902(1),

RECEIVED

OCT 28 2025

Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

*infra*. *Oyama v. California*, 332 U.S. 633, 635 (1948) ("that it contravenes the due process clause by sanctioning a taking of property").  The policy of the Constitution protects Patel from hacking or abusive engagement of AI-brain, brain-machine interfaces (BMI), and machine learning technologies that are owned by him or intimately connected to his person which functionable, colloquially, as "stress weapons."  *See generally Hicks v. Collier*, No. 2:24-CV-00126, 2024 U.S. Dist. LEXIS 241129 (S.D. Tex. Oct. 31, 2024).  The principles of Due Process apply to the use of cell phone connectivity by major United States providers, *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994) (citing *Nollan v. California Coastal Comm'n*, 483 U. S. 825, 837 (1987), and actions related to this are also subject to the policies established by the Constitution and First Amendment.  *TikTok Inc. & ByteDance Ltd. v. Garland*, 122 F.4th 930 (D.C. Cir. 2024).  *See TikTok Inc. v. Garland*, 145 S. Ct. 57 (2025).  These simple illustrative changes to the pluralized knowledge of the technology industry can dispositively prove that Patel is not delusion or with a matter that is "fanciful" or "wholly incredible."  *Infra*.

## I.     INTRODUCTION

Plaintiff Raj Patel, a former student at the University of Notre Dame Law School, was dismissed from the Juris Doctor program and subsequently sought re-admission.  In pursuing re-admission, Patel alleges that the University failed to provide adequate procedural safeguards, including notice of the grounds for denial and an opportunity to respond.  *R. v. Univ. of Cambridge ex parte R* (1994) (emphasized that decisions affecting students' rights must follow principles of natural justice; a university cannot act arbitrarily or deny students a fair hearing).  *Washington v. Glucksberg*, 521 U.S. 702, 703-04, 711, &

724 (1997) (natural justice requires that Plaintiffs receive sacrifice(s) for dignities, personal autonomy, and liberties in accordance with the tradition and history of common law with and without regard to Ordered Liberty).  Patel seeks reconsideration of the Court's order dismissing the complaint as frivolous, irrational, and wholly incredible.  Dkt. 6.  Patel respectfully contends that the complaint alleges a concrete injury—namely, the deprivation of a protected property interest in the form of a Juris Doctor degree—and that the factual allegations are neither fanciful nor baseless under prevailing legal standards. The Court dismissed Patel's claim as frivolous despite the assertion of a deprivation of a concrete property interest—namely, the denial of a juris doctor degree after completion of the academic requirements and satisfaction of tuition obligations.  *Infra*, n. 12.  A property interest exists where there is a "legitimate claim of entitlement."  *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).  *Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (entitlement to property interests can be found on existing rules and understandings of an institution). Patel's complaint alleges, despite completing all required coursework, fulfilling his tuition and cost obligations, the United States refused to require conferring the J.D. degree without cause or due process, which, if proven true, constitutes a deprivation of a protected interest.  U.S. const. art. IV, § 1 & amend. V.  *Marbury v. Madison*, 5 U.S. 137, 163 (1803) ("every right, when withheld, must have a remedy, and every injury its proper redress").  *R (on the application of Begum) v. Denbigh High School*, UKHL 15 [2006] (judicial review is available in any relationship involving a public law function even where the other party is private).

Patel contends that the Defendant United States Department of Education, as an agency of the United States, exercises regulatory oversight over institutions of higher education that receive federal funding.  Patel further alleges that the Defendant Department failed to enforce applicable federal standards requiring institutions to afford students due process in disciplinary and admissions-related decisions.

Patel asserts that this failure constitutes a deprivation of his protected property interest in continued education and professional licensure, and that the denial of procedural protections implicates the privileges and immunities guaranteed to citizens under the Constitution.  *Oyama*, 332 U.S. at 635 (Once property rights are constitutionally entitled under state law, donees and grantees have Federal due process protections for those interests; owning property is a privilege that is credited by national citizenship of the United States; and persons of ancestry from races indigenous to India and Hindus have equal property rights to white citizens[1]).  42 U.S.C. § 1983 (2025).  8 U.S.C. § 42 (1946 Supp.).  *See also* 42 U.S.C. § 1982 (2025).  *Oyama*, 332 U.S. at 636 ("it is incumbent on us to inquire not merely whether those rights have been denied in express terms, but also whether they have been denied in substance and effect. We must review independently both the legal issues and those factual matters with which they are commingled.").

## II.    MORE FACTS

- On January 15, 1844, the Indiana General Assembly created the University of Notre Dame du Lac and gave it a boon of being a "body corporate and politic," rather than being a simple corporation.  https://www.nd.edu/assets/docs/charter.pdf/.

---

[1] Plaintiff Patel is of this ancestry and United States-born.

- However, the Defendant United States has held that the University of Notre Dame is a state actor performing a public function of education and thus subject to judicial review.[2]  See *Marsh v. Alabama*, 326 U.S. 501 (1946) (public functions are subject to judicial review).  *Moss*, 2016 WL 5394493.  For additional information, Patel is aware of a rumor that the University of Notre Dame and the State of Indiana invest their money together, defying United States regulations.

- The agreements of conferring juris doctor degrees are "public Acts" that the United States is in original jurisdiction to enforce, U.S. const., art. IV, § 1, furthered by implications of the 5th Amendment.  *Infra* n. 3.  Note also, this separation of power can be analogized to the powers of the Monarch of England, who heads both church and state, and conferment of degrees are from the Monarch's Sovereignty.  *Comm. on the Judiciary v. McGahn*, 415 F. Supp. 3d 148, 154 (D.D.C. 2019) ("it is a core tenet of this Nation's founding that *the powers of a monarch must be split between*

---

[2] See e.g., https://harvardlawreview.org/wp-content/uploads/2017/04/1768-1775_Online.pdf (CONSTITUTIONAL LAW — STATE ACTION DOCTRINE — DISTRICT COURT PRESERVES CLAIM THAT UNIVERSITY IS A "COMPANY TOWN." — *Moss v. Univ. of Notre Dame Du Lac*, No. 3:13 CV 1239, 2016 WL 5394493 (N.D. Ind. Sept. 27, 2016) (p. 1769-70 – "Moss argued that Notre Dame is a state actor like the company town in Marsh, 20 where the Supreme Court required that a corporation-owned community protect its residents' and visitors' First Amendment rights. The court rejected the University's argument that Marsh cannot apply to private universities. Judge Moody was unpersuaded by a case that found that a university was not made a state actor by virtue of educating people....Along the same lines, Judge Moody held that the case for Notre Dame as a company town, while "fall[ing] far on the spectrum from 'likely,'" was not "so speculative and unsupported by law that [the claims] should be dismissed." This holding was premised on allegations of fact that "Notre Dame's campus is...open to the public and...similar to a traditional town, containing public roads, stores, restaurants, a post office, [and] a police department," as well as a fire department, a health center, the state's second-largest tourist attraction, "and more.").

the branches of the government to prevent tyranny...see also *Buckley v. Valeo*, 424

U.S. 1, 120, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976)).[3]  Together with the states, the

Federal government has a shared but unequal sovereignty around issues of

education through the "public Act" clause.  U.S. const. art. IV, § 1.  *See also*

Supremacy Cl., U.S. const. art. VI, § 2.

- The University of Notre Dame is constructively entangled with the Defendant(s)

  United States.  *Compare* "constructive entanglement" of public function *with*

  *Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n.*, 531 U.S. 288, 289 &

  298 (2001) ("close nexus between the State and the challenged action..."may be

  fairly treated as that of the State itself"..."The nominally private character of the

  Association is overborne by the pervasive entwinement of public institutions and

  public officials in its composition and workings, and there is no substantial reason

  to claim unfairness in applying constitutional standards to it.").  The Defendants

---

[3] Cawdrey's Case (1591) Reported by Sir Edward Coke, King James I stated: "By the ancient laws of this Realm...England is an absolute empire and monarchy consisting of one Head, which is the King, and of a body politic...the clergy and the laity, both of them next and immediately under God, subject and obedient to the Head.  Statute of Colleges (1545) allowed the Monarch to dissolve colleges and redirect their revenues—treating educational institutions as instruments of royal will.  The King is *fons honorum* – the foundation of honor, law, and learning – exclusive legal authority in granting state titles and other honors such as college degrees.  *Parker v. District of Columbia*, 478 F.3d 370, 382, n. 8 (D.C. Cir. 2007) ("It seems, indeed, to be considered, by the ancient laws of the Kingdom, not only as a *right*, but as a *duty*; for all the subjects of the realm, who are able to bear arms, are bound to be ready, at all times, to assist the sheriff, and other civil magistrates, in the execution of the laws and the preservation of the public peace. And that right which every Protestant most unquestionably possesses, individually, may, and in many cases must, be exercised collectively, is likewise a point which I conceive to be most clearly established by the authority of judicial decisions and ancient acts of parliament, as well as by reason and common sense.") (italics in original).

exclusionary practices also stretch to recognition as a pipeline of clerks and other attorneys for its courts throughout the country, faculty appointment of state actors, and specialties in international law which is exclusive purview of the United States.

- Patel was a part of the inaugural class of the Brownsburg High School Senior Academy, first such program in the State of Indiana and second in the nation.

- Contemporaneously, the United States, through the Defendant President, is claiming jurisdiction against several like universities for breaches of their public function within the bounds of the constitution.

- Defendant Associate Justice Barrett of the United States is a professor at the University of Notre Dame and is entangled with it.

- The Defendant President sends his military to the University of Notre Dame at every football game, maintains an ROTC program, sends federal judges to give talks to law students, maintains accreditation by the ABA which is located in the federal D.C. jurisdiction, has federal judges and other United States state actors as a part of its faculty, receives Federal aid in tuition and other aid from the Defendant United States, and follows United States DOE regulations.

- Hence, claims are proper against the United States for the "marble cake" federalism between the United States and the University of Notre Dame.

- Federalism holds the Defendant(s) vicariously labile.

- On August 14, 2025, the Indiana Attorney General said, "Just because [the University of Notre Dame] say[s]…[it is]…complying with state law does not make it so. Publicly available materials in which the [university] describe [its] race-

7

conscious policies and practices are troubling and raise serious questions about whether [it] treat[s] [it] students, faculty, and staff differently based on race or skin color." Exs. A-E.[4]

- Patel attended the ICLEO Scholarship Summer Summitt at the University of Notre Dame over a six (6) week period.[5]

- Patel also received a Barbri 3-day prep course scholarship in New York assigned by the Notre Dame Law School admissions office.

- Patel received other merit scholarships from the Notre Dame Law School.

- Patel was statutorily entitled to reinstatement of his ICLEO Scholarship after taking a half-semester off to concentrate on his health.

- The ICLEO Scholarship award each recipient in Patel's class of students, "ICLEOs," a guaranteed $1,000 scholarship for bar exam prep.

- Patel is one of over 3,000,000 United States base officers.

---

[4] Some outlets say that the University of Notre Dame and other universities "gave Harvard what belongs to Harvard," via the factions loyal to Harvard at those institutions, for the matter convicted in *Students for Fair Admissions v. President & Fellows of Harvard*, 600 US _ (2023) and that denying Patel re-admissions is a hypothetical tactic in administering its illegal enterprise. However, however hypothetical University of Notre Dame "public Act" of denying Patel his juris doctor, this district court has a duty to ensure that *Students for Fair Admissions* is enforced as law of the land because they have done so traditionally in education cases. *Brown v. Bd. of Educ. of Topeka*, 349 U.S. 294, 301 (1955) ("basis with all deliberate").

[5] If the court finds that the legal education is not a public function, Patel's legal education at the University of Notre Dame through the ICLEO Scholarship was a joint-venture, sufficient to trigger the "public Act" and due process. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970). *Malinski*, 324 U.S. at 415.

- The law between Defendant(s) and the University of Notre Dame du Lac is in inheritance, and stretches unequivocal judicial review by this court under *Marbury v Madison*. I.C. § 1-1-2-1. *Marbury*, 5 U.S. at 177-78. *Comm. on the Judiciary*, 415 F. Supp. 3d at 154.

- Patel's cell phone connectively always remain in the one or two bar services. Both AT&T and T-Mobile have been unable to keep Patel's 5G capabilities are provided due to Defendants' action depriving the enjoyment of his property interests in his cell phone and telephone plan.

### III.    LEGAL STANDARD

The standard for frivolousness under 28 U.S.C. § 1915(d) (or under general pleading standards) is high. A claim is frivolous only if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The claim must rise to the level of being "fantastic or delusional" to be dismissed as wholly incredible. *Denton*, 504 U.S. at 32-33.

Under Rule 59(e) or Rule 60(b), a court may relieve a party from a final judgment for reasons including: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; and (6) any other reason that justifies relief. Reconsideration is appropriate where the court has overlooked controlling law or material facts, or where manifest injustice would result from the judgment. See *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996). Relief under Rule 60(b) is extraordinary but is warranted where a judgment was entered based on a misapprehension of the facts or the law, or where denial would produce an unjust result. The court must grant judicial review of state claims

or business claims were the entwinement with the United States triggers professional standards, and the United States is required to ensure that Patel's property interests are only deprived for professional standards applicable after non-arbitrary and non-capricious conduct.  Cf. *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 215, 217, 221, & 225 (1985) ("Ewing's claim, therefore, must be that the University misjudged his fitness to remain a student in the Inteflex program. The record unmistakably demonstrates, however, that the faculty's decision was made conscientiously and with careful deliberation, based on an evaluation of the entirety of Ewing's academic career.  When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment.  Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.").[6]  *Oyama*, 332 U.S. at 637 (property rights are to be used for the benefit of the property, including investments in own business or others).  *Dolan*, 512 U.S. at 375 ("Under the well-settled doctrine of 'unconstitutional conditions,' the government may not require a person to give up a constitutional right in exchange for a discretionary benefit conferred by the government where the property sought has little or no relationship to the benefit.").

---

[6] *See* All Writs Act, 28 U.S.C. § 1651.  Here, the State of Indiana opined through two of its superior courts that cannot provide Patel a remedy.  Patel interprets those courts' opinions that the state courts and agencies lack competent jurisdiction over the case.  The United States needs to ensure that Patel has "fundamentally fair procedures" in remedying an arbitrary or capricious denial of readmissions and conferment of degree. Hypothetically, this court could issue mandamus to non-named parties or any of the Defendants and order a settlement in aid of the jurisdiction of the Civil Rights Act of 1866.

## IV.    ARGUMENT

Here, Patel's allegations are grounded in specific facts and supported by documentary evidence.  Patel respectfully submits that the Court may have misunderstood or overlooked these facts.  To dismiss a legitimate legal grievance without addressing its factual or legal foundation risks denying a claimant their day in court.  The Court's dismissal, if not reconsidered, forecloses the opportunity for Patel to obtain discovery or further develop the record—despite an alleged constitutional and contractual violation implicating significant interests.  Patel respectfully requests that this Court alter or amend its judgment under Federal Rule of Civil Procedure 59(e)**,** on the grounds that the Court's determination that Patel's claim was "irrational" and "wholly incredible" overlooks relevant legal standards and factual allegations supporting the plausibility of Patel's claims.  Dkt. 6.  See also *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996).

1. Constitutional Claim Under the Fifth Amendment.

Patel alleges that the United States failed to enforce the Fifth Amendment's Due Process Clause in the context of a public function—specifically, the provision of legal education by the University of Notre Dame Law School.  *Malinski*, 324 U.S. at 415.  Although the University of Notre Dame is a private institution, Patel contends that its legal education program operates as a public function subject to constitutional scrutiny under *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961), and related precedent.

In *Board of Regents*, 408 U.S. at 577, the Supreme Court recognized that a property interest exists where there is a "legitimate claim of entitlement," which, here is made by taxpayer-funded scholarship promoting Plaintiff Patel in the "in pursuing a law degree and

a career in the Indiana legal and professional community" through its sovereignty.  I.C. §

33-24-13-2.  The United States, in federalism with the University of Notre Dame, and

responsible for enforcing the "public Act" of conferring juris doctor degrees created this

entitlement by giving Patel the ICLEO Scholarship similar to how the state gave the parties

in Ohio entitlement to a public school education in *Goss*.

The following facts taken together create a legitimate property interest and proper

liberty interest consistent with mandatory authority for this court in *Goss*:

- Patel completed the minimum 68 credit hours of the juris doctor degree program required by the ABA at the University of Notre Dame;
- Completed his University of Notre Dame-specific juris doctor thesis with the professor expressly assigning a passing grade;
- Patel received grades on his transcript for the same 68 credit hours mentioned above;
- Chose to attend undergraduate schools and colleges based on perceived favorability by law schools;
- Completed a pre-law course track at his undergraduate institution;
- Received a Bachelor of Arts showing interest in law school;
- Enrolled in classes to prepare for the Indiana, Delaware, and D.C. bar exams;
- Consciously chose not to participate in Notre Dame Law Review or other journals for the interests of his brand of lawyering;
- Paid tuition through student loans;[7]
- Completed two summer associateships;
- Was scheduled for a clerkship externship interview with Associate Justices of Indiana Supreme Court prior to taking his leave;
- Interviewed for a clerkship with the Federal District in Indianapolis;
- Followed the attendance and contractual requirements of the Indiana taxpayer-funded and Notre Dame-assigned ICLEO Scholarship under I.C. § 33-24-13;
- Ran for and was elected as a Student Representative from the Notre Dame Law School to the Indiana Bar Association in Indianapolis, IN;
- Specialized in corporate law throughout the United States through courses offered by the University of Notre Dame;

---

[7] Payment of consideration is sufficient for property title and interest to vest from grantor to grantee.  *Oyama*, 332 U.S. at 639, 678, & 680.

- Fulfilled three summer internships, one in Indianapolis local government, the United States Senate, and a law office in Atlanta, GA that are credited for those on the law school trajectory;
- Patel was in talks of his guaranteed $1,000 Barbri bar exam prep scholarship that Patel from the ICLEO Program Office;
- Participated in extracurricular and civic engagement at the Notre Dame Law School to distinguish himself from other presidents in eye of the succession of the same;
- Spent tens of thousands of dollars of court cost in seeking legal or equitable recover against the University of Notre Dame in courts in Indiana;
- Bought and attended a Law School Admissions Tests (LSAT) test prep course over twelve (12) weeks;
- Took and paid for the LSAT (after taking the SAT and ACT years prior); and,
- Remained in good standing with the Notre Dame Law School's unilateral contractual promise, memorialized in the Hoynes Code (that did not discuss "voluntary separation of leave" until only after his matriculation at the same law school and then created a distinction with a "voluntary separation of leave" and "leave of absence") create such a legitimate entitlement to the J.D. degree.

Many of Patel's referenced initiatives are similar to those of his colleagues and are generally considered reasonable and credible within their group.[8]  Patel alleges a deprivation of a property interest protected under the Fifth Amendment's Due Process Clause.  *R (on the application of New London Coll. Ltd.) v. Sec'y of St. for the Home Dep't*, UKSC 51 [2013] ("Where a body, public or private, exercises a public function or a statutory power which affects legal rights or legitimate expectations, its actions are susceptible to judicial review.").  Patel alleges that he possessed a constitutionally protected property interest in his continued legal education, grounded in his enrollment, academic standing, and investment in the Juris Doctor program.  *Oyama*, 332 U.S. at 639 ("intent to prevent, evade or avoid").  It is the regular and ordinary role of the Federal government to put a

---

[8] This court does not need to consider public retaliation as a factor should this case gain prominence, even if impartiality is being closely examined in relation to the facts.

check on the states and corporations and ensure that tyranny does not transpire from arbitrary, unfair, and undue actions.  *Id*. at 647.  The University of Notre Dame Law School, as a recipient of federal funds, is subject to federal oversight and must comply with due process requirements in decisions affecting student status.  When the University of Notre Dame Law School or any other law school does not act fairly with students, applicants, and other members of its body corporate and politic, the Federal government is in aid to ensure that the nation's customs and traditions of conferring juris doctor degrees are not violated.  *Id*. at 640-41 (previously enacted statutes become vindicated by a new constitutional amendment and "recording" of property is sufficient to constitute for delivery).  Patel should be granted Federal force to receive his equitable and legal damages to compensate for the deprived property and liberty interests discussed herein, and, if the Defendant(s) challenge(s) the validity of Patel's property then they carry the "burden of proving" in open court that Patel does not have a due process right for the property and liberty interests as a grantee/donee of the state-sanctioned University of Notre Dame Law School juris doctor degree.  *Id*. at 641.  It is essential to recognize that when the state, the Federal government, or one of its institutions—such as this court—establishes an "extraordinary" standard resulting in a grantee "irretrievably" losing property "without compensation," a violation of due process occurs and must be appropriately remedied by front-line Federal district courts of the United States Supreme Court.  *Id*. at 644.

Patel further alleges that the Defendant United States Department of Education, by failing to investigate or enforce procedural safeguards in his case, acted in a manner that deprived him of due process under the Fifth Amendment.  The government's inaction, in

light of its regulatory obligations, constitutes action sufficient to trigger constitutional

scrutiny.  The Federal government must check, through both the Fifth Amendment and the

"public Act" clause, that Patel recovers his undue losses.

2. <u>Constitutional claim under the Fourteenth Amendment's Privileges or
Immunities Clause which are protected independently by the Clause and by
Implication of the 5th Amendment's Due Process Clause.</u>

The denial of a Juris Doctor degree, despite completion of academic requirements,

constitutes a tangible injury supported by documentary evidence.  *Colgate v. Harvey*, 296

U.S. 404, 426-27 (1935) ("It is said that an exemption which may have for its aim the

advancement of local interests can hardly be condemned under a Constitution which for a

century has known a protective tariff....As citizens of the United States, our people are

members of a single great community consisting of all the States united, and not of distinct

communities consisting of the States severally. No citizen of the United States is an alien

of any the Union, and the very status of national citizenship connotes equality of rights and

privileges, so far as they flow from such citizenship, everywhere within the limits of the

United States.").

The defendant's (s') failure to ensure equal access to procedural protections in

federally regulated institutions undermines the constitutional promise of equal treatment

under law.  Cf. *Colgate*, 296 U.S. at 427.

Patel alleges that the denial of procedural fairness by the United States in his

pursuit of legal education—a pathway to professional citizenship and civic participation—

amounts to a denial of the privileges and immunities guaranteed to citizens of the United

States and protected against the Defendant(s) by the 5th Amendment.

3. <u>The 5th Amendment Due Process Clause is within scope against the Defendants because the Defendants created constructive entanglement with the University of Notre Dame, and because the proof of legal education – the conferment of degree – serves as a "public Act" that is overseen and balanced by the Federal government.</u>

The 5th Amendment Due Process Clause is within scope against the Defendants because the Defendants are constructively entangled with law schools within the District of Columbia and the Defendants must afford citizens in states the equal protection by the implication of the 5th Amendment. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

4. <u>The Deprivation of Patel's life, liberty, and property interests are also illegal exactions caused by the Defendants.</u>

Whenever the Defendant(s) Takes or deprives a citizen of the United States, like Patel, of property, it must provide "just compensation." U.S. const. amend. V. The United States has failed to provide just compensation or failed to cause just compensation. These exactions and other claims against Patel are open to judicial review, with the allegations accepted as "true" to support Patel's bid for legal recourse. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Preconceived notions about weight gain or Patel's significant achievement in losing 100 pounds should not prevent the court from deeming the pleading sufficient. Compare Dkt. 6 at 1 with *Erickson v. Pardus*, 551 U.S. 89 (2007) ("It was error for the Court of Appeals to conclude that the allegations in question, concerning harm caused petitioner by the termination of his medication, were too conclusory to establish for pleading purposes that petitioner had suffered "a cognizable independent harm" as a result of his removal from the hepatitis C treatment program...Specific facts are not necessary; the statement need only " 'give the defendant fair notice of what the...claim is and the grounds upon which it rests...The complaint stated that Dr. Bloor's decision to

remove petitioner from his prescribed hepatitis C medication was "endangering [his] life." Petitioner's Complaint 2. It alleged this medication was withheld "shortly after" petitioner had commenced a treatment program that would take one year, that he was "still in need of treatment for this disease," and that the prison officials were in the meantime refusing to provide treatment. *Id*., at 3, 4. This alone was enough to satisfy Rule 8(a)(2). Petitioner, in addition, bolstered his claim by making more specific allegations in documents attached to the complaint and in later filings. The Court of Appeals' departure from the liberal pleading standards set forth by Rule 8(a)(2) is even more pronounced in this particular case because petitioner has been proceeding, from the litigation's outset, without counsel. A document filed *pro se* is "to be liberally construed," *Estelle*, 429 U. S., at 106, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."). *Oyama*, 332 U.S. at 637 ("used for the benefit of the property"), 639 & 644-45. *See generally Dolan*, 512 U.S. at 375.

5. <u>This court in equity should restore Patel's property title interests in his juris doctor degree, benefits of each of his student government presidency, and enjoyment for the candidacy for the United States Presidency in accordance to the ultimatums in Ordered Liberty so that no Presidential Candidate wields more clout than permissible by Constitution.</u>

Furthermore, neither juris doctor degrees, student government presidencies nor the United States Presidency are government handouts, but, in fact, are titles to property and liberty interests. Patel was a legitimate candidate for the juris doctor degree and a future United States Presidential candidate. It is safe to say that the common law allows this court to sit in equity to allow Patel and his supports in society the remedial rights to prevent any future United States Presidential candidate from 2028, when Patel first

17

becomes qualified to be President of the United States, wields more clout than allowed by law. *See generally Wilson v. Bowser*, No. 24-cv-0397 (D.C. Feb. 6, 2024). In other words, the court must restore Patel's property interests and liberty interests in his juris doctor degree, benefits of student government presidencies, and candidacy for the United States Presidency in 2028, 2032, or onwards that the tilts in the scales of justice, time, and equity allow. *Oyama*, 332 U.S. at 637-39. These property titles set ultimatums in Ordered Liberty that apply in statecraft, government, and society, but the Defendants disregarded them to Patel's detriment and their unlawful gain in interests. *Goss*, 419 U.S. 574-75. This court should exercise jurisdiction in Patel's favor, so, in application, even unnamed future United States Presidential candidates for 2028 elections are availed to detrimental stress. Cf. *Daniels v. Williams*, 474 U.S. 327, 341 (1986).

6. <u>The deprivation of Patel's path to substantial gainful activity constitutes an unconstitutional deprivation of liberty.</u>

The Defendants willful blindness and failure to act constitute not only deprivation of property but also deprivation of liberty. *Oyama*, 332 U.S. at 648-50 (social, legal, and economic impact of the deprivations should not be ignored and hold strong influence in recovering for property and liberty deprivations). *Id*. at 663 ("rigid scrutiny").

"The Due Process Clause also forbids arbitrary deprivations of liberty...Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," the minimal requirements of the Clause must be satisfied...School authorities...could seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment...It is apparent that the claimed right of the...to determine

unilaterally and without process whether that misconduct has occurred immediately collides with the requirements of the Constitution." *Goss*, 419 U.S. 574-75. Patel's state of being has transformed into an early reliance on the Social Security regime for lack of substantial gainful activity that the Defendant(s), knowingly, with deliberate indifference and by willful blindness, allowed the University of Notre Dame to arbitrarily deny him his juris doctor degree. The circumstance of Patel not graduating and lacking a law degree, despite his prior achievements on a pre-law and lawyering trajectory, may present a misleading impression and could subject him to potentially unfavorable perceptions regarding academic integrity. Thus, substantial justice requires this court to order Defendant(s) to perform its constitutional role for "public Act" and to all him to earn back his losses, especially since neither the United States, the State of Indiana, or the University of Notre Dame has a compelling, countervailing reason to deny Patel his juris doctor degree. See also *Dobbs v. Jackson Women's Health Org.*, 597 U.S. ___ (2022) ("Ordered liberty sets limits and defines the boundary between competing interests. *Oyama*, 332 U.S. at 650 (an entities legal tactics should be evaluated against contemporary climates of the interest of the time and Congressional intent to protect individuals based on classifications often used as a "detriment" to one's own property interests). Ex. A-E (Indiana Attorney General states that the University of Notre Dame is violating the United States Supreme Court's finding in *Students For Fair Admissions* because it discriminates against likeable and well-liked Asians such as plaintiff). Additionally, several students at the University of Notre Dame, acting in accordance with Indiana property law, have taken voluntary leaves of absence in good standing and subsequently returned to their studies.

*Oyama*, 332 U.S. at 653 (Federal due process applies to private economic sanctions, like deprivation of property interest, as well as public sanctions).  42 U.S.C. § 1981 (2025).

Patel has a cognizable claim against the named Defendant(s) to recover damages for the deprivation of liberty with the conferment of a Notre Dame Law School juris doctor degree, a "public Act."  U.S. const. art. IV, § 1 & amend. V.  42 U.S.C. § 1981(c) (2025).

AI-brain technologies, BMI, and machine learning world has created property interest in their enjoyment, and no action against these property rights by Patel is free from the policy of the rights and duties written for the Defendants in the Constitution.  *See generally Alich v. Opendoor Techs. Inc.*, No. CV-22-01717-PHX-MTL, 2024 U.S. Dist. LEXIS 86544 (D. Ariz. May 14, 2024).  Nevertheless, these same grants come as property rights with Patel's bachelor's degree in Religion (*cum laude*) from Emory University.  *Boom Co. v. Patterson*, 98 U.S. 403, 408 (1878).  As a result, Patel should have the opportunity to present his case in court to seek specific performance and additional remedies against the Defendants, ensuring he can fully exercise the rights to AI-brain technologies, BMI, and machine learning sciences as granted by the Sovereign for the furtherance of the policy of Ordered Liberty vindicative by the Civil Rights legislation.  *Oyama*, 332 U.S. at 671.

Not only do these facts give rise a particularized injury, but standing is also proper on the basis that Patel's cell phone service is regularly deprived of his strength and speed in the exact path that he moves.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).  This circumstantial evidence, proving plausibility for each claim and issue, must not be denied by the court allows for claims against the Defendants for the deprivation of his property

and liberty interests. *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). *See also Words, Inc. v. Singer*, 810 A.2d 910 (D.C. 2002).

> 7. <u>The United States is vicariously liable for the University of Notre Dame causing Plaintiff Patel to believe he had unconditional re-admission based on prior discussions with Notre Dame Law School faculty sponsored by the defendant(s).</u>

The United States should take responsibility for its inactions and actions in depriving Plaintiff Patel of his property and liberty interests in pursuing a professional licensure career.

The court erred in deeming Patel's claim frivolous and wholly incredible.  Patel's complaint is grounded in a concrete deprivation of a property interest—a juris doctor degree—that he had a legitimate entitlement based on the law school's own policies and representations that told him to "come back next semester" prior to taking the voluntary leave and would have the re-instatement of his Notre Dame Law School-assigned and taxpayer-funded ICLEO Scholarship. *Perry*, 408 U.S. at 601 (property interests can be derived from state-created expectations).  See generally *Oyama*, 332 U.S. at 635-688.

Patel can produce specific, documental facts showing that he completed the necessary requirements and was safely en route to complete the remaining 22 credit hours during the remainder of his fifth semester and upcoming sixth semester.

This case is not based on fantasy or delusion but on a good-faith, legally grounded claim of due procedural and contractual violation.  Dismissal as frivolous is inappropriate where a reasonable factfinder could conclude that Patel's rights were violated.[9]

Even if the Court finds no legal error or new evidence, relief under Rule 60(b)(6) is appropriate to prevent injustice.  Patel has been denied the opportunity to proceed on a claim involving constitutional or contractual rights to a professional degree—an outcome that may have and has had career-altering implications.  Dismissal of this claim without an opportunity for discovery or an evidentiary hearing risks permanently foreclosing any remedy for a deprivation of protected interests.  The Defendant(s), Sovereign, should not have allowed Patel's environs to transform into a state where his liberty and property interests and the enjoyment of such were deprived.  Cf. *Comm. on the Judiciary*, 415 F. Supp. 3d at 213 ("Stated simply, the primary takeaway from the past 250 years of recorded American history is that Presidents are not kings...This means that they do not have subjects, bound by loyalty or blood, whose destiny they are entitled to control. Rather, in this land of liberty, it is indisputable that current and former employees of the White House work for the People of the United States, and that they take an oath to protect and defend the Constitution of the United States.").  Patel further invokes *Bolling*, where the Supreme Court held that the Fifth Amendment's Due Process Clause contains an implicit guarantee of equal protection against federal action.  Patel asserts that the federal government's

---

[9] Patel speaks from experience and first-hand knowledge that students, young and adults, as their representative, would feel a deprivation of their property interests, as a matter of law, as well as liberty interests.  See generally *Oyama*, 332 U.S. at 639.

failure to ensure equal access and procedural fairness in legal education, disregard of professional standards, implicates this constitutional protection.

8.  <u>Plaintiff Patel has no unconstitutional "interests" with the Defendant(s) which must be resolved together with Ordered Liberty.</u>

The Fifth Amendment's Due Process Clause protects not only procedural fairness but also the substantive rights that are "implicit in the concept of ordered liberty." The failure of the United States to ensure constitutional protections in the public function of legal education undermines this foundational principle, as articulated in *Palko v. Connecticut*, 302 U.S. 319 (1937), and reaffirmed in *Duncan v. Louisiana*, 391 U.S. 145 (1968).

The doctrine of ordered liberty recognizes that individual freedoms must be preserved within a framework of law and measured justice. 42 U.S.C. § 1981(c). It is through this lens that the federal government, and by extension the President—bound by the Oath of Office to "preserve, protect and defend the Constitution of the United States"—has a constitutional duty to ensure that laws, including those safeguarding due process and conferring "public Act," are faithfully executed under Article II, Section 3. *Oyama*, 332 U.S. at 654 (presidential intervention is warranted). Patel asserts that the failure of the United States to enforce the Fifth Amendment's Due Process Clause in the public function of legal education—particularly in the context of the University of Notre Dame Law School—undermines the very principles of ordered liberty and constitutional accountability. See also *Dobbs*, 597 U.S. at ___ ("Ordered liberty sets limits and defines the boundary between competing interests. *Roe* and *Casey* each struck a particular balance between the interests of a woman who wants an abortion and the *interests* of

what they termed "*potential life*.").  *Goss* orders its jurisdiction regarding property and

liberty interests are also subject to Due Process of the United States Fifth Amendment and

no such public interest of the interest of the United States exists to devoid Patel of

conferring his juris doctor degree or a sum of money for compensation for damages from

the same.  The ordered Liberty interests of the United States are in fact in supporting and

upholding its own state, and denying Patel not only his juris doctor degree or earned

damages but also denial of his day in court, violates the Due Process the Defendants must

give its 3,000,000 or so base officers, even without the vested "public Act" authority.[10]

*Parker*, 478 F.3d at 382, n. 8.

---

[10] The University of Notre Dame denial of readmissions deprive not only Patel but also anyone connected to Patel and his law school cohort (whose mental fitness can be measured against Patel's, even showing that possibly over half of the students are mentally less fit than Patel while in his artificially-lowered mental health; the same is true for the presiding officers of the court and students in law schools within this court's district) or their privacy. Cf. *Buck v. Bell*, 274 U.S. 200, 206-07 (1927) (party had sufficient Due Process). https://petrieflom.law.harvard.edu/2020/10/14/why-buck-v-bell-still-matters/ ("It used the highest court in the nation and the power of its laws to broadcast a lasting message to those with disfavored bodies and minds that their societal value lies not in their lives, but in their deaths.").  The United States should take responsibility for the affronts to its state and jurisdiction – its sovereignty and hegemony – by the implications of Plaintiff T.E.,E. Patel.  *See also* 42 U.S.C. § 9501 (Congress intending to protect parties from the effects of and surrounding issues *Buck*).  Patel has reasonable standing against the children and estates of the named Defendants and others, as the Founders would say that the only "limitation" on "freedom" during "government service" is that the officials, like the Defendants, may not act repugnant to the integrity of Ordered Liberty because the Constitution, as it precedentially opens, giving contemporaneous cause to a major political party, to "secure the Blessings of Liberty to ourselves and our Posterity," and "general welfare."  *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006).  U.S. const., pmbl. Needless to say, the original promotion of America makes Patel a whole "person" in original intent of our Country and the Civil Rights Acts expand these liberties.  Cf. *Moore v. Regents of the Univ. of Cali.*, 51 Cal. 3d 124, 136 (Cal. 1990).  Defendants, Defendants' children, and non-parties are responsible for the reality they become proponents of against Patel and hold accountable to non-parties which wrongfully give the impression that it has annexed this Chair of the Court or entire corporate body politics by the State of

9. <u>Plaintiff Patel has a cognizable claim against the Defendant(s) for the presumption of "evasion" of the State of the United States.</u>

While not Kings, Presidents of the United States are the Chief Executives whose power devolves from the United States bases, similar to the Machiavellian interpretation of the Republic of Florence.  Federalist No. 80.  Plaintiff Patel is one such actor, with two United State base offices, and the Honorable Defendants must diplomatically, favorably to Patel engage in Taking Care the laws and aid his Liberty to do substantial justice.  Fed. R. Civ. P. 8(e).  *Oyama*, 332 U.S. at 663 ("common occupations").  "The Constitution of the United States, as I read it, embodies the highest political ideals of which man is capable. It insists that our government, whether state or federal, shall respect and observe the dignity of each individual, whatever may be the name of his race, the color of his skin or the nature of his beliefs." *Id*.

10. <u>The Defendants have failed to perform their oath-bound duty under by the Guarantee Clause which is usually a political question but judicial review is required when the government or its actors fail to perform its duty, due to Due Process and the Fifth Amendment.</u>

---

Indiana.  *Buck*, 274 U.S. at 206-07.  The adversarial nature of the law makes no other reality perceivable.  The court has inherent authority as well to order Patel his remedies and re-admissions back into law school.  In essence, it is fundamental legal knowledge that Patel does not require a signed permission slip to be a member of the bar in this New Carolean Era, under the leadership of His Majesty King Charles III as King of the "Community of Communities."  The court has what is needs – a well-pleaded complaint, and Ordered Liberty is now enforced with greater strength.  *Patel v. King Charles III*, No. 2:23-cv-07760-TJH-PD (C.D. Cal. 2024).  If this court seeks competent jurisdiction, Patel can attest from personal experience that Censor Sue, with her aerial vantage point, is likely to volunteer to make sure court's opinion in favor of Patel is executed.  Treaty of Paris (1783).  This court has every right to pluralize Ordered Liberty, just as it does for the some elites – similar to the sister state court holding for Defendant Trump that "rich, white men, in America, still don't go to jail."

When a state law creates a body politic, the United States Supreme Court requires federal courts to interpret them as "body politic" subject to protection against the "whole people" who promoted that corporate body politic. *Munn v. Illinois*, 94 U.S. 113, 124, 126, & 133 (1876) (relation to private corporations). A "body politic," like the one(s) the Defendants are responsible for performing parenting roles of non-party university, compare *Chisholm v. Georgia*, 2 U.S. 419, 447 & 462 (1793) *with Moss*, No. 3:13 CV 1239, 2016 WL 5394493, is sufficiently like a State within the context of the Guarantee Clause, U.S. const. art. IV, § 4, where, therefore, the Defendants must in its supremacy determine and remedy Patel's injuries. *Texas v. White*, 74 U.S. (7 Wall.) 700, 730-31 (1869) ("the power to carry into effect the clause of guaranty is primarily a legislative power, and resides in Congress,"). Failure of the political branches or named defendants to perform its duties upon the affronts of property and liberty constitutes a mandatory justiciable matter for, including but not limited to, deprivation of a property interests, liberty interest, and due process. *See e.g.*, *Goss*, 419 U.S. at 574-75. Therefore, this court should allow the well-pleaded complaint against the Defendants for deprivation of Patel's property and liberty interests rather than affirming its dismissal. *Gregory v. Ashcroft*, 501 U.S. 452, 463 (1991). Cf. *Luther v. Borden*, 223 U.S. 118, 151 (1912).

## V.    CONCLUSION

For the foregoing reasons, Patel respectfully requests that the Court reconsider its dismissal of the complaint in plain terms and vacate the judgment. In other words, the court is not being asked to adjudicate a dispute between one party declaring control over time by crossing the International Date Line and another whose body count still is

comparatively modest.  Nor is the Supreme Court asking this court to explain the Founding

writ.  In fact, the superior authority has emphasized that a claim is frivolous only if it is

"based on an indisputably meritless legal theory" or "factual contentions that are clearly

baseless," *Neitzke*, 490 U.S. at 327, and further clarified in *Denton*, that the "wholly

incredible" standard is reserved for allegations that are delusional or fantastic**.**  Patel's

allegations are grounded in facts and documents, not fantasy.  The factual basis includes:

- Completion of all graduation requirements;
- Payment of tuition and fees;
- Academic transcript;
- Enrollment verification;
- Lack of due process in the denial of the degree;
- State of Indiana records of being awarded the ICLEO Scholarship;
- United States Court of Appeals opinion stating that Patel was a Notre Dame Law School student;
- University of Notre Dame lawyers stating Patel was a lawyer;
- Letters of recommendations from Notre Dame Law School faculty after taking a voluntary separation of leave and while seeking readmissions;
- Letters of recommendations from then-United States Senator, now-Ambassador Joe Donnelly to the Holy See (who is also on the University of Notre Dame faculty);
- Conversations with the F.B.I. HQ in Indianapolis;
- Spending tens of thousands of dollars in seeking earned damages or an equitable remedy in courts in Indiana against the University of Notre Dame;
- Press releases and news from the Indiana Attorney General telling the University of Notre Dame that it is fulfilling a public function;
- United States District Court for the Northern District of Indiana opinion calling the University of Notre Dame a public entity subject to review by the plain meaning of "public Acts" in U.S. const. art. IV, § 1;
- Federal unsworn declaration that supporting documents exist and have been previously produced in Indiana Superior Courts with the complaint.

This evidence substantiates the plausibility of Patel's allegations and directly rebuts the

Court's conclusion that the claims are baseless.  See also *United States v. Chappell,* 698

F.2d 308 (7th Cir. 1983) (per Federal Rules of Evidence 902(1) certain documents are self-

authenticating as must be admitted by Federal courts without juxtaposition),[11] *cert. denied*, 461 U.S. 931 (1983). *Johnson v. United States*, 290 A.3d 500, 510 (D.C. 2023) ("any tendency to make the existence of any fact...more probable or less probable..."—a "reasonable possibility" of such a connection suffices.). *Ransom v. United States*, 322 A.3d 521, 527 (D.C. 2024) ("'[T]his court has held that authenticity need not be established with certainty as a condition precedent to the admission of evidence as relevant...Rather, in general, 'all that must be shown is a reasonable possibility that the evidence is what it purports to be.'")[12] See also *Oyama*, 332 U.S. at 669. Matters as to AI-brain technologies, BMI, and machine learning and deprivation of cell phone service agreement prove the existence of the stress weapon, and that, in fact, Patel is not delusional, fanciful, or wholly incredible. *Plyer v. Doe*, 457 U.S. 202 (1982). As a matter of law, claims are proper against Defendants from amongst the many sovereigns deriving authority with, in, and from the

---

[11] Federal Rules of Evidence 902(1) - (1) Domestic Public Documents That Are Sealed and Signed . A document that bears: (A) a seal purporting to be that of the United States; any state, district, commonwealth, territory, or insular possession of the United States;...a political subdivision of any of these entities; or a department, agency, or officer of any entity named above; and (B) a signature purporting to be an execution or attestation." The University of Notre Dame is a political subdivision of Indiana. *Moss*, 2016 WL 5394493. Defendant Barrett is graded against Patel (although Patel's grades were deflated by Defendants), and Barrett and other Defendants have property and liberty interests against Patel, including this court's cause of competence.

[12] It is a straightforward matter that the Defendant includes the United States Government and the President of the United States, who can confirm this without dispute. Additionally, Justice Barrett's email records from Notre Dame will show that Patel and Justice Barrett (or her office) communicated before Patel took a voluntary leave of absence in good standing from the University of Notre Dame. As Justice Cardoza would say, this matter is far too frivolous and irrelevant to begin debating. The Defendants should have ensured that the University of Notre Dame conferred Patel his juris doctor degree timely to not deprive his lawfully-entitled property and liberty interests. "Certainly, from a constitutional standpoint, superiority in efficiency and productivity has never been thought to justify discrimination." *Oyama*, 332 U.S. at 671.

United States Constitution and is of national importance.[13]  *Plyer*, 457 U.S. at 202 (as applied, denying ICLEOs the conferring of juris doctor degrees within the time frame agreed upon, requires heightened scrutiny, as they are entitled to property under state law).  In light of the conclusions in Dkt. 6, the court ought to direct the parties to settle to support the transfusion of the Constitution.  *Oyama*, 332 U.S. at 675 n. 3 and 684 (federal court ought to consider the "resulting effect" of the "presumption" of state-supported property of grantee).  *Dolan*, 512 U.S. at 375 (United States government cannot require giving up free will, a right, for the enjoyment of a discretionary property benefit).

Respectfully submitted,

/s/ Raj K. Patel

T.E. T.E. Raj K. Patel (*pro se*)
4330 Strathmore Lane
Zionsville, IN 46077

President/Student Body President,
    Student Gov't Ass'n of Emory U., Inc.
    2013-2014 (corporate sovereign 2013-
    present)
Student Body President, Brownsburg
    Cmty. Sch. Corp./President,
    Brownsburg High Sch. Senior
    Academy Student Gov't 2009-2010
    (corporate sovereign 2009-present)
Rep. from the Notre Dame L. Sch.
    Student B. Ass'n to the Ind. St. B.
    Ass'n 2017

---

[13] Frivolous lines of a pro se filing does not make the filing frivolous on its face.  It is an abuse of discretion for lowers courts to stop the jurisdiction of the United States Supreme Court's precedent by falsely finding the entirety of Patel complaint "frivolous" or "inadequate" when no such opportunity is provided, especially with its pro se pleading rights precedent.  See *supra*.  As a last resort, the court can simply allow amendment to the complaint since no amended complaint has been filed by Patel.  *Contra*. Dkt. 6.

Deputy Regional Director of Great Lakes
　　Reigion, Young Democrats of Am.-
　　High Sch. Caucus 2008-2009
Co-Founder & Vice Chair, Ind. High Sch.
　　Democrats 2009-2010
Vice President of Fin. (Indep.), Oxford C.
　　Republicans of Emory U., Inc. 2011-
　　2012

J.D. Candidate, Notre Dame L. Sch.
　　(permanently withdrew)

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA
Washington, D.C.**

| | |
|---|---|
| THE EXCELLENT THE EXCELLENT RAJ K. PATEL, from all capacities, et al., | |
| *Plaintiff* | No. 1:25-cv-02383-UNA |
| v. | |
| THE UNITED STATES, et al., | Dated: October 28, 2025 |
| *Defendants* | |

**RAJ K. PATEL'S TENTH AMENDED UNSWORN DECLARATIONS UNDER PENALTY OF PERJURY**
28 U.S.C. § 1746

In aid of surviving the court's sua sponte dismissal and finding the sufficiency of my complaint in favor of allowing the complaint, I, Raj K. Patel, state the following:

1. I was a University of Notre Dame Law School, located in Indiana, student from August 2015 to November 2017. Fed. R. Evid. 902(1). I have self-authenticating documents that will show the same. *United States v. Chappell,* 698 F.2d 308 (7th Cir. 1983), *cert. denied*, 461 U.S. 931 (1983).

2. I disagree with the University of Notre Dame that I was no longer a law school student after November 2017, as I had answered the semester roll call earlier that semester. The University of Notre Dame did not provide an appeal or decision for its decision.

3. I was awarded the Indiana Conference of Legal Education Opportunity (ICLEO) Scholarship codified under I.C. § 33-24-13.

2

4. The Notre Dame Law School admissions office referred me to the ICLEO

   Scholarship application and program because they thought I was a good candidate

   for it.

5. I have always been and remain in good standing (academic and disciplinary) with

   the University of Notre Dame.

6. The University of Notre Dame's unilateral J.D. program terms, as outlined in the

   Hoynes Code, did not address "voluntary separation of leave in good standing" or

   "leave of absence" until these provisions were codified after I had already been

   enrolled at Notre Dame Law School for couple of months.

7. The University of Notre Dame did not allow me a chance to challenge its decisions

   of denial of readmissions.

8. I have completed sixty-eight (68) credit hours of my legal education at the Notre

   Dame Law School.  According to the United States Department of Labor, law is not

   an apprenticeship, unlike other doctrinal education, needing formal training outside

   of schooling, maintaining the Founding spirit of reading law.  Thus, my pro se

   complaint and second amended motion to reconsider is adequate.

9. I completed my juris doctor-required thesis with a passing grade by the expression

   of my law school grading professor.

10. The University of Notre Dame did not provide a hearing for its decision to deny me

    readmission and continue the opportunity to have my juris doctor degree conferred

    to me.

11. I funded my law school education through scholarships (public and private) and student loans, and the money was automatically disbursed by my bank to the University of Notre Dame Office of Student Accounts.

12. I notified the United States, President Trump, Professor Amy Barrett's Office, and the Defendant United States Department of Education of the conduct by the University of Notre Dame, and they have failed to act in giving me a remedy, compensation, restitution, reliance, incidental, parasitic, etc.

13. I understood, and it is my legal opinion that a third-party would understand, that my recent conversations prior to taking a voluntary separation of leave in good standing meant that I would be electively readmitted by answering a roll call survey.

14. No one in the University of Notre Dame or the United States stated differently.

15. I believe that the Defendant President Trump and his office is aware of contracts and obligations it has with the University of Notre Dame in its public role in the marble cake theory of federalism.

16. I was a student in the inaugural year of the Brownsburg High School Senior Academy in Brownsburg, Indiana. I was also the Brownsburg Community School Corporation Student Body President and the Brownsburg High School C.H.A.I.N. Link Student Government President that year.

17. I attended Emory University in Atlanta, Georgia for undergraduate education, and I duly served a term of student government president. Fed. R. Evid. 902(1).

18. Conferring degrees is a "public Act" either by a public school or a private school performing a public function. U.S. const. art. IV, § 1.

4

19. I have press coverage information from school, local, state (*Indy Star*), and national news (*NY Times*) sources that prove I was a student and also in those capacities.

20. I have a Bachelor of Arts degree in Religion (*cum laude*), a research degree, from Emory University that adds to the credibility and adequacy of my pro se complaint as self-authenticating document before this court. Fed. R. Evid. 902(1). I also have Bachelor of Arts in Political Science. *Id*. The National Endowment for the Humanities funds the degrees. 20 U.S.C. § 951.

21. I truly believe that my person is connected to an AI-brain technology, brain-mind interface, or machine learning or other like technologies from the political economy that is truly and that a programmer or hacker will be sufficient for the intended use from the Sovereign. Any positive activation of these technologies is swiftly turned off in seconds by a duality. I believe these technologies are also protected by the First Amendment, Second Amendment, and Fifth Amendment.

22. I have reason to believe that the happenings of this case include Establishment of Religion of based on the modernized Hindu epic *Ramayana*, cruel and unusual treatment, terrorism, knavishness from the Defendants, and unconstitutional and inherently socialist and arbitrary Censor behavior, specifically countervailing Patel's social, economic, political, religious, legal, entrepreneurial and psychological interests.

23. The mentioned technologies have only positively engaged to get a glimpse of what not even money can buy and is continuously been used to my detriment and has remained concurrently activated only that way. I believe these technologies remain

engaged to create stress, depression, anxiety, obesity, and social and psychological hardships.

24. I truly apologize to the Court if I did not pick up on the benevolent donor(s) intendedness for the Constitution's goals.

I, Raj K. Patel, declare certify under penalty of perjury that the foregoing is true and correct.

_____
                                          Signature

Executed on October 28, 2025

**CERTIFICATE OF SERVICE**

I, Raj K. Patel, certify that I filed the Tenth Amended Motion to Reconsider, along with the Unsworn Declaration, and Exhibits A-F, filed on October 28, 2025, and I certify that I provided notice of filing to the United States and courtesy notice to all parties listed below:

United States Attorney General
950 Pennsylvania Avenue, NW
Washington, DC 20530
pamela.bondi@usdoj.gov

U.S. Attn'y's Office for Dist. of D.C.
555 Fourth Street, NW
Washington, DC 20530
usadc.webmaster@usdoj.gov

Dated: October 28, 2025

Respectfully submitted,

/s/ Raj K. Patel
T.E. T.E. Raj K. Patel (*pro se*)
4330 Strathmore Lane
Zionsville, IN 46077
rajp2010@gmail.com